[Cite as *In re T.B.*, 2014-Ohio-2051.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 99931**

# IN RE: T.B., ET AL.

# Minor Children

[Appeal By S.B., Mother]

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Juvenile Division
Case Nos. AD 11902219, AD 11902220,
AD 11902221, AD 11902222, AD 11902223,
AD 11902224, AD 12901401, and AD 12901402

**BEFORE:** S. Gallagher, P.J., E.A. Gallagher, J., and Stewart, J.

**RELEASED AND JOURNALIZED:** May 15, 2014

**ATTORNEY FOR APPELLANT**

Joseph V. Pagano
P.O. Box 16869
Rocky River, Ohio   44116

**ATTORNEYS FOR APPELLEE, CUYAHOGA COUNTY DIVISION
OF CHILDREN AND FAMILY SERVICES**

Timothy J. McGinty
Cuyahoga County Prosecutor

BY: Rachel Eisenberg
Assistant Prosecuting Attorney
3955 Euclid Avenue
Cleveland, Ohio 44115

**Also listed:**

**Guardian ad Litem for Children**

Jeffrey Froude
P. O. Box 771112
Lakewood, Ohio   44107

**Social Worker**

Altovise Beard
8111 Quincy Avenue
Cleveland, Ohio   44115

**For Q.S.**

Amy K. Habinski
Habinski Law Offices L.L.C.
11470 Euclid Avenue
Suite 342
Cleveland, Ohio   44106

SEAN C. GALLAGHER, P.J.:

**{¶1}** Appellant S.B. ("mother") appeals multiple judgments of the Cuyahoga County Court of Common Pleas, Juvenile Division, that terminated her parental rights over her eight children and awarded permanent custody of the children to the Cuyahoga County Division of Children and Family Services ("CCDCFS"). For the reasons stated herein, we affirm.

**{¶2}** Mother is the biological mother of eight children, who are referred to herein as child 1 through child 8. Among the children are two sets of twins, the first set being child 5 and child 6, and the second set being child 7 and child 8. The dispositional hearing in the case with regard to child 1 through child 6 was held on May 16, 2012, and October 22, 2012. Because of service issues, a subsequent hearing was held as to child 7 and child 8 on December 17, 2012.

**{¶3}** Altovise Beard, the social worker of record on the case, first became involved in May 2007 when there were concerns for mother being overwhelmed with her then four children. In February 2008, the four children were brought into the custody of CCDCFS because they were left at home alone, which resulted in mother's first conviction of child endangering.

**{¶4}** A safety plan was developed with the maternal grandmother. However, within a few weeks, the maternal grandmother informed Beard she could not continue to care for the children because of her medical issues.

**{¶5}** Temporary custody was terminated in July 2009, and the four children returned to mother with protective supervision, which ended in January 2010. Mother lacked stable housing and lived in a shelter from June 2010 through November 2010, during which time she had her first set of twins, child 5 and child 6.

**{¶6}** In February 2011, one of the twins, child 6, suffered severe second- and third-degree burns over 13 percent of her body. A safety plan again was developed with the maternal grandmother. The maternal grandmother violated the plan by leaving the children alone with mother. The six children were taken into emergency custody of CCDCFS on February 8, 2011.

**{¶7}** A case plan was developed for mother, and mother engaged in some services. Mother attended parenting classes and completed a psychological evaluation. However, as a result of the burn incident involving child 6, mother was convicted of child endangering a second time and sentenced to 18 months in prison. CCDCFS received temporary custody of the six children. All six children were placed in specialized foster homes because of behavioral issues and special needs. The six children visit with each other monthly.

**{¶8}** The children were not placed with the maternal grandmother during the second removal because of her violation of the safety plan. The maternal grandmother was offered visitation with the six children but had not visited since August 2011 because of the location of the visits and transportation issues.

{¶9} There had been minimal to no involvement by the children's fathers. Although a relative of the father of the first set of twins had expressed an interest in placement with her, she never followed through with a request for fingerprints.

{¶10} CCDCFS investigated relatives for placement, but found none suitable. One maternal aunt of the children, B.B., had a felony conviction for assault. A second maternal aunt, A.R., did not feel mother should be incarcerated, was only interested in one child, and expressed uncertainty because she was under the impression the children could go back to their mother when she returned home.

{¶11} On November 8, 2011, CCDCFS moved for permanent custody of the children. The case worker believed permanent custody was in the best interest of the six children. She expressed a concern with the recurring neglect of the children, with abuse from the burn episode, and for the safety of the children. She also referred to mother's two convictions related to child endangerment and her incarceration for 18 months. She felt there was a need for a safe, stable, and permanent environment that would meet the special needs of the children and be in their best interest. The guardian ad litem also recommended permanent custody for the children.

{¶12} Mother filed a motion to modify temporary custody to legal custody of child 1 through 4 to the maternal grandmother, or in the alternative to various relatives. The maternal grandmother is on disability for asthma and denies ever violating the safety plan. Although she acknowledged mother was in prison for child 6's burn injuries, the

maternal grandmother stated mother did not cause the injuries.  Maternal aunt B.B., who had a prior felony conviction, was willing to take legal custody of the twins.

{¶13} A week before the final hearing regarding the six children, mother requested an updated psychological evaluation.  CCDCFS objected, and the trial court overruled mother's request.

{¶14} In the psychological evaluation that was conducted in May 2011, Dr. Frank Ezzo diagnosed mother with multiple disorders.  He testified at the hearing that his diagnosis of mother's dependent personality disorder remained valid because it is a chronic, ingrained part of an individual's personality.  He indicated that with this disorder a person has difficulties making decisions for herself, has difficulties being independent and relies on other people, and has difficulties functioning.

{¶15} A subsequent hearing was held concerning mother's second set of twins, child 7 and child 8.  Those two children were born while mother was in prison for her second conviction for child endangering.  They were taken into emergency custody by CCDCFS on October 28, 2011.  The two children have been in the same foster-to-adopt home since shortly after birth.  The foster home is a safe and suitable home.

{¶16} CCDCFS filed for permanent custody of these two children because it had already obtained temporary custody of mother's six older children with a pending motion for permanent custody, and because mother had a history of neglect with her children and poor decision-making skills.  One sibling had been severely burned while in the custody

of mother, resulting in mother's second conviction for child endangering and an 18-month sentence. That child was adjudicated abused.

{¶17} At the time of the December 2012 hearing, mother did not have a job and was residing in a halfway house where children were not allowed. She had completed a parenting class, although the case worker continued to have concerns regarding mother's decision making. Mother conveyed to the case worker her belief that her children were in the custody of CCDCFS because of their behaviors and minimized her accountability. Mother did not inquire of the case worker about the welfare and well-being of her children. Although an updated psychological evaluation was not performed, CCDCFS had concerns arising from a psychological evaluation that was done in May 2011.

{¶18} CCDCFS investigated relatives for placement, but found no suitable relatives. The maternal grandmother was not considered because of her February 2011 safety plan violation. In the two months prior to the hearing, the maternal grandmother did not visit with or inquire about the welfare of the twins. Maternal aunt B.B. had a felony conviction for assault and lost custody of two of her own children. She did not believe mother was guilty of child endangering, never visited the two children, and lacked any bonding with them.

{¶19} Mother filed a motion for legal custody to maternal aunt B.B., or in the alternative for temporary custody to CCDCFS. The social worker and the guardian ad litem believed permanent custody to CCDCFS was in the best interest of the children.

{¶20} CCDCFS was unsuccessful in its attempts to contact the alleged father of the twins, for whom paternity was not established. He had not supported the twins since their birth. He was also the father of the sibling who had been burned and adjudicated abused.

{¶21} With regard to each of the eight children, the juvenile court awarded permanent custody to CCDCFS and terminated mother's parental rights. Following disposition of the cases involving child 7 and child 8, mother filed an appeal. Mother was granted leave to file an amended notice of appeal to include the judgments as to her six other children, and the parties were permitted to file supplemental briefs in the matter.

{¶22} Mother raises four assignments of error for our review. We begin by addressing mother's second and third assignments of error. Under her second assignment of error, mother claims the trial court erred by failing to grant her motion for an updated psychological evaluation and by referring to the psychological examination that was conducted before child 7 and child 8 were born.

{¶23} Mother did not request an updated evaluation until one week prior to the continued hearing date of October 22, 2012. Although mother maintains that the trial court relied upon an outdated psychological examination, the examination was performed in 2011 and Dr. Ezzo testified as to which portions of the report remained valid. He testified that the diagnosis of dependent personality disorder is a chronic condition that does not alter because of the passage of time. Further, the trial court only referenced the psychological examination by stating as follows: "Although mother later completed

parenting and the psychological evaluation, she has not benefitted from same." Even if an error were found, it would be rendered harmless based upon the record before us.

{¶24} Under her third assignment of error, mother claims the trial court improperly considered information during proceedings held in other cases. The dispositional hearing for child 7 and child 8 was conducted following the hearings involving the first six children. Mother claims that in the rulings involving child 7 and child 8, the court indicated that the record of the case included the testimony of the maternal grandmother, yet the maternal grandmother did not testify at the December 17, 2012 hearing. Mother further states that in the rulings regarding the first six children, the court cites to mother's testimony in regard to her convictions, yet mother did not testify at those hearings. These slight references, however, were not imperative to the trial court's findings and did not form a substantial basis for the court's decisions. We find any error in this regard was harmless.

{¶25} The court was considering matters relating to the same family, and there was significant overlap in the testimony and evidence presented. The trial court heard the cases regarding the first six children, as well as the last two. The court separately considered whether to grant permanent custody as to each child. Each decision was supported by clear and convincing evidence presented at the dispositional hearings pertaining to the respective child.

{¶26} Mother's second and third assignments of error are overruled.

**{¶27}** Next, we consider mother's first and fourth assignments of error. Under her first assignment of error, mother claims the trial court erred in terminating her parental rights and awarding permanent custody to the agency and in finding permanent custody was in the children's best interest. Under her fourth assignment of error, mother claims CCDCFS failed to make reasonable efforts to place the children with a suitable relative.

**{¶28}** A trial court may terminate parental rights and grant permanent custody of a child to a children's services agency if the court finds, by clear and convincing evidence, that one of four conditions set forth in R.C. 2151.414(B)(1)(a)-(d) applies, and that permanent custody is in the best interest of the child. *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶ 23. "Clear and convincing evidence" is evidence that "will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 477, 120 N.E.2d 118 (1954).

**{¶29}** In the case of each child, the trial court determined that the condition set forth under R.C. 2151.414(B)(1)(a), and correspondingly the factors under R.C. 2151.414(E), were satisfied. R.C. 2151.414(B)(1)(a) requires that the child is not abandoned or orphaned or has not been in the temporary custody of one or more public children's services agencies or private child-placing agencies for 12 or more months of a consecutive 22-month period and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents. R.C.

2151.414(E) provides guidelines for a court charged with determining whether a child cannot or should not be placed with either parent within a reasonable period of time under R.C. 2151.414(B)(1)(a). A finding that a child cannot or should not be placed with either parent within a reasonable time is mandatory when the court concludes that any one of several statutory factors applies to each parent. *In re C.W.*, 1st Dist. Hamilton No. C-110342, 2011-Ohio-4756, ¶ 26.

{¶30} After considering the testimony and evidence and the report of the guardian ad litem, the court found several factors under R.C. 2151.414(E) existed for each child, including the following:

> Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home.

> The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child.

> The parent is incarcerated for an offense committed against the child or a sibling of the child.

> The parent has abandoned the child.

> The parent is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect.

{¶31} For several of the children, the trial court also found:

The parent has had parental rights terminated with respect to a sibling of the child and the parent has failed to provide clear and convincing evidence to prove, that notwithstanding the prior termination, the parent can provide a legally secure permanent placement and adequate care for the health, welfare and safety of the child.

{¶32} With respect to child 6, who suffered the burns, the trial court also found:

The parent committed an abuse against the child, caused the child to suffer any neglect, or allowed the child to suffer any neglect between the date of the original complaint alleging abuse or neglect was filed and the date of the filing of the motion for permanent custody.

{¶33} The trial court's findings were supported by the record, which showed mother had twice been convicted of child endangering, child 6 was adjudicated abused, mother was incarcerated for an offense against her child, mother was in a halfway house that did not allow children, and the fathers and alleged father displayed little, if any, commitment to their children, did not provide support, and/or abandoned their children.

{¶34} The trial court also found by clear and convincing evidence that a grant of permanent custody was in the best interest of each child. In considering the best interest of the child, the trial court considered all relevant factors, including the factors set forth in R.C. 2151.414(D)(1), which include: (1) the interaction and interrelationship of the child with others; (2) the wishes of the child; (3) the custodial history of the child; (4) the child's need for a legally secure placement and whether such a placement can be achieved without permanent custody; and, (5) whether any of the factors in divisions (E)(7) to (11) apply. "[N]eglected and dependent children are entitled to stable, secure, nurturing and

permanent homes in the near term * * * and their best interest is the pivotal factor in permanency cases."   *In re T.S.*, 8th Dist. Cuyahoga No. 92816, 2009-Ohio-5496, ¶ 35.

{¶35} The trial court considered the custodial history of the children, as well as mother's poor judgment, her neglect and abuse of the children, and her denial of responsibility for her criminal convictions.   The court noted mother was unemployed, she was in a halfway house that did not permit children, and she did not call on a consistent basis to inquire about the children.   The court considered the lack of visitation, communication, and support of the fathers and alleged father.   The court considered the recommendations of the case worker and the guardian ad litem for permanent custody. The court also considered relatives of the children, including the maternal grandmother and maternal aunt B.B., and the children's need for a safe, stable, and permanent home. The court determined it was in the best interest of the children to be placed in the permanent custody of CCDCFS.

{¶36} Mother argues that the trial court erroneously indicated that "prior to the dispositional hearing, no relative or other interested person has filed or has been identified in a motion for legal custody."   However, there was clear and convincing evidence to demonstrate that the proposed legal custodians were not suitable relatives and an award of legal custody would not have been in the children's best interest.   The maternal grandmother had violated a case plan by leaving mother alone with the children.  Maternal aunt B.B. had a prior felony conviction for assault, had two of her own children removed from her custody, did not believe mother was guilty of child

endangering, did not call to inquire of the welfare of the children, and never visited the second set of twins.

**{¶37}** The record also supported the trial court's finding in each case that CCDCFS had made reasonable efforts to prevent the removal of the child from the child's home or to return the child to the home. Despite case plan services, mother continued to exercise poor judgment and had been incarcerated for her second conviction of child endangering. Contrary to mother's argument, the record supports the trial court's determination that CCDCFS "has properly investigated relatives for the possibility of placement and none have been found to be appropriate." For reasons already stated, the maternal grandmother and maternal aunt B.B. were not suitable placements. Maternal aunt A.R. never committed to taking any child on a long-term basis and did not feel mother should have been incarcerated or the children placed in custody. One identified paternal relative failed to submit fingerprints.

**{¶38}** We also recognize that "[R.C. 2151.414] does not make the availability of a placement that would not require a termination of parenting rights an all-controlling factor [and] does not even require the court to weigh that factor more heavily than other factors." *In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, 857 N.E.2d 532, ¶ 63. Rather, the statute "requires the court to find the best option for the child[.]" *Id.*

**{¶39}** Our review of the record in this case reflects that there was clear and convincing evidence to support the trial court's determination that the child in each case could not be placed with either parent within a reasonable period of time or should not be

placed with the child's parents and that a grant of permanent custody was in the best interest of the child. Upon a thorough review of the record, we find the trial court's determination in each of the underlying cases is supported by clear and convincing evidence and the decisions are not against the manifest weight of the evidence.

**{¶40}** Mother's first and fourth assignments of error are overruled.

**{¶41}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


SEAN C. GALLAGHER, PRESIDING JUDGE

EILEEN A. GALLAGHER, J., and
MELODY J. STEWART, J., CONCUR