[Cite as *In re M.C.*, 2020-Ohio-6688.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
SANDUSKY COUNTY

In re M.C.

Court of Appeals No. S-20-024

Trial Court No. 21930010

**DECISION AND JUDGMENT**

Decided: December 15, 2020

* * * * *

Autumn D. Adams, for appellant.

Dean E. Ross, for appellee.

* * * * *

**OSOWIK, J.**

{¶ 1} This is an appeal from a June 5, 2020 judgment of the Sandusky County Court of Common Pleas, Juvenile Division, which terminated the parental rights of appellant, mother, and granted custody of the minor child, M.C., to appellee, the Sandusky County Department of Jobs and Family Services ("SCDJFS"). For the reasons set forth below, this court affirms the judgment of the trial court.

{¶ 2} Appellant sets forth the following three assignments of error:

I. The trial court abused its discretion by not extending the period of temporary custody to [SCDJFS] when mother arguably completed case plan services and continued to make progress in her parenting skills [].

II. [] SCDJFS failed to act in good faith with its reasonable attempts to unify.

III. SCDJFS failed to prove by clear and convincing evidence that reunification could not occur immediately or within six (6) months.

{¶ 3} The following undisputed facts are relevant to this appeal. On January 10, 2019, M.C. was born. M.C.'s mother is the sole party appealing this case. M.C.'s father voluntarily consented to the award of permanent custody to appellee. M.C.'s father is also the father of two of appellant's four other minor children born prior to M.C., all of whom were previously removed from the custody of appellant.

{¶ 4} Of appellant's four prior children, the permanent custody of two of the children was granted to SCDJFS and they were subsequently adopted, the permanent custody of one of the children was granted to Fairfield County Children Services and the child was subsequently adopted, and the remaining child was placed into the legal custody of a relative.

{¶ 5} On January 11, 2019, the day after M.C.'s birth, emergency temporary custody was awarded to SCDJFS.

2.

{¶ 6} On January 15, 2019, SCDJFS filed a complaint in dependency regarding M.C. On June 14, 2019, appellant consented to a finding of dependency and to temporary custody of M.C. being granted to SCDJFS.

{¶ 7} On November 18, 2019, SCDJFS filed a motion requesting an award of permanent custody of M.C. On February 20, 2020, the temporary custody of M.C. with SCDJFS was extended for an additional six-month period of time.

{¶ 8} On May 26, 2020, approximately one and one-half years after M.C.'s case began, the underlying permanent custody trial was conducted.

{¶ 9} On June 3, 2020, the trial court determined, pursuant to R.C. 2151.414(B)(1)(a), that clear and convincing evidence was presented that it was in the best interest of M.C. for permanent custody to be granted to SCDJFS, as the child could not be placed with appellant within a reasonable time and should not be placed with either parent. This appeal ensued.

{¶ 10} In the first assignment of error, appellant alleges that the trial court abused its discretion in failing to grant another extension of time to appellant for the continuation of services prior to the grant of permanent custody to appellee. We do not concur.

{¶ 11} It is well-established that demonstrating an abuse of discretion requires showing more than a mistake of law or an error in judgment. It must be shown that the disputed trial court action was arbitrary, unreasonable, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

3.

{¶ 12} In support of the first assignment, appellant conjectures that, had another extension of time been granted, appellant could have ultimately demonstrated sufficient progress to arguably warrant the statutory reunification of M.C. with appellant.  The record of evidence does not bear out this assertion.

{¶ 13} The record reflects considerable evidence demonstrating appellant's ongoing issues adverse to the best interest of M.C. so as to preclude eligibility for reunification.  These issues were repeatedly demonstrated during the course of the trial.

{¶ 14} For example, considerations as basic as appellant's ability to safely feed the infant were shown to be counter to reunification.  The SCDJFS assigned caseworker testified that several times during supervised visitation, M.C. began to choke during feeding by appellant, necessitating emergency intervention by service providers.

{¶ 15} Consistently, caseworkers repeatedly observed appellant's inability to focus on the needs of the infant for any length of time, a prerequisite to arguably possessing the ability to safely, consistently attend to the needs of the child.

{¶ 16} A representative of the Help Me Grow program, another service provided to appellant, testified that despite appellant's long-term involvement with the program, appellant still lacked proper parenting skills.  Of particular concern was appellant's persistent pattern of exercising poor judgment, resulting in decisions perilous to the best interests of M.C.

4.

{¶ 17} Detailed testimony was provided from multiple witnesses reflecting that over a period of time, appellant sent approximately $30,000 to a man whom appellant has never met.

{¶ 18} Of particular concern, the testimony further reflected that appellant continued to send money to this man, and continued to take affirmative steps to meet the man, even after learning that the man was a con artist utilizing a false identity.

{¶ 19} Significantly, the record reflects that even after the above-described man threatened to kill appellant's unborn child, with whom she became pregnant during the pendency of this action, appellant continued to communicate with the man, continued to send him money, and continued to actively seek cohabitation with him.

{¶ 20} As further relates to the above-referenced pregnancy, the assigned CASA testified that appellant's express focus was concern that she would lose eligibility for the various government benefits programs associated with having a minor child if permanent custody of M.C. were awarded to appellee, and motivated by those concerns, appellant became pregnant again during the course of this case to ensure continuation of her financial benefits.

{¶ 21} After appellant's disclosure that she had become pregnant again in order to preserve benefits eligibility, inquiry was made regarding identifying the father of the new pregnancy.  In response, appellant conveyed that she was uncertain and furnished the names of the three men most likely to be the father.

{¶ 22} Caseworker testimony disturbingly reflected that although appellant had accused M.C.'s father of rape and had obtained a civil protection order against him, she later voluntarily resumed communications and contacts with him.

{¶ 23} The record reflects that although appellant mistakenly maintains that she had successfully completed domestic violence services, in actuality, the instructor retired and was not replaced, necessitating the removal of domestic violence services from appellant's case plan.

{¶ 24} In conjunction with the above-discussed issues and considerations, testimony further reflected that appellant struggles with serious, ongoing mental health issues, including bipolar disorder, borderline personality disorder, adjustment disorder, and P.T.S.D.

{¶ 25} The record shows that appellant's participation in services, so as to technically complete certain services, was not accompanied by an improvement in the requisite parenting skills and abilities so as to make a viable case for reunification.

{¶ 26} For example, despite completing an array of case plan services during the course of this case, as well as in the cases arising from the removal of her four prior children, appellant nevertheless continued to make disqualifying choices, such as being unyielding in sending money to and seeking to move in with a man she knew to be a con artist and who had threatened her unborn child.  Similarly, appellant continued to remain in contact with another man whom appellant had previously accused of rape.  Further,

6.

appellant continued to be so unable to focus on routine parenting tasks as to be unable to safely feed M.C. during supervised visitation.

{¶ 27} We find that the record is replete with evidence reflecting that the trial court was not arbitrary, unreasonable, or unconscionable in declining to grant appellant an additional extension of time in which to continue services prior to granting permanent custody of M.C. to appellee.

{¶ 28} We find appellant's first assignment of error not well-taken.

{¶ 29} In appellant's second assignment of error, appellant similarly alleges that SCDJFS did not act in good faith in its reasonable efforts with appellant. We do not concur.

{¶ 30} In support of the second assignment of error, appellant sets forth unsupported, blanket conclusions, such as the alleged, "[I]rrational and contradictory criticisms of [appellant by SCDJDS]."

{¶ 31} We note that although appellant mistakenly maintains that SCDJFS improperly failed to add her to case plan services until January 23, 2020, the record conversely reflects that she was added to the case plan on June 14, 2019, and was furnished with multiple services in an unsuccessful effort to foster progress towards reunification.

{¶ 32} On the same basis as was discussed above in detail in response to the first assignment of error, we similarly find that appellant has not demonstrated that the trial

7.

court was arbitrary, unreasonable, or unconscionable in determining that SCDJFS made the requisite reasonable efforts towards reunification pursuant to R.C. 2151.414(E)(1).

{¶ 33} Contrary to appellant's position, the record reflects that appellant has a lengthy history over the course of many years of being involved with multiple agencies in multiple counties in connection to appellant's minor children, of being furnished with comprehensive case plan services by those agencies for an opportunity for appellant to exhibit the progress needed for possible reunification, and of failing to exhibit the parenting ability progress necessary for arguable best interest of the child reunification pursuant to R.C. 2151.414(D).

{¶ 34} Wherefore, we find appellant's second assignment of error not well-taken.

{¶ 35} In the third assignment of error, appellant alleges that SCDJFS failed to show by clear and convincing evidence that reunification could not timely occur. We do not concur.

{¶ 36} It is well-established that a trial court's disputed termination of parental rights and award of permanent custody to an agency cannot be reversed unless it is shown that the judgment was not supported by clear and convincing evidence. *In re N.B.*, 8th Dist. Cuyahoga No. 101390, 2015-Ohio-314, 2015 WL 406036, ¶ 48.

{¶ 37} Clear and convincing evidence is that evidence which will produce in the mind of the trier of fact a firm belief or conviction in the allegations sought to be established. While the evidence must be more than a preponderance, it does not require

8.

that the evidence rise to the certainty of beyond a reasonable doubt as is utilized in criminal cases. *In re T.B.*, 8th Dist. Cuyahoga No. 99931, 2014-Ohio-2051, ¶ 28.

{¶ 38} In support of the third assignment, appellant again speculates that had appellant been granted an additional extension of time in which to continue services, fitness for reunification could have been shown.

{¶ 39} Our examination of appellant's assertions submitted in support of the third assignment of error find such a position to be unpersuasive.

{¶ 40} For example, while appellant concedes that she gave considerable cash money to a man she knew to be a con artist, continued communicating with and providing money to him despite learning of his falsity, and attempted to meet the man and pursue cohabitation with him despite his threats to her unborn child, she nevertheless unconvincingly asserts that because she never physically took M.C. with her on her trips to attempt to meet him, that somehow reflects her suitability for reunification with M.C. We disagree.

{¶ 41} Appellant's assertion fails to acknowledge both that M.C. was not in her physical custody since the day after the child's birth and further fails to acknowledge the facially unsuitable parental judgment in voluntarily sending your household money to, and seeking to live with, a man you have never met in person and who has threatened your unborn child.

{¶ 42} In addition, appellant again mistakenly claims that she successfully completed domestic violence services. As discussed above, the service provider retired

9.

and was not replaced. Ultimately, that portion of case plan services was removed. Such circumstances do not constitute evidence of the successful completion of domestic violence services.

{¶ 43} The record reflects that the trial court conducted a thorough permanent custody hearing in this matter. The record reflects that based upon the submission of substantial, unrefuted evidence, the trial court made a number of factual findings supportive of the R.C. 2151.414 statutory determination that the best interests of M.C. were served by awarding permanent custody to appellee.

{¶ 44} Pursuant to R.C. 2151.414(B)(1), the trial court must find by clear and convincing evidence that at least one of the following factors applies: (a) the child is not abandoned or orphaned, but the child cannot be placed with either parent within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned, and there are no relatives who are able to take permanent custody; (d) the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for 12 or more months of a consecutive 22-month period; or (e) the child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state.

10.

{¶ 45} As applied to the instant case, the undisputed trial court findings included that four prior children were removed from appellant and adjudicated to be abused, neglected, or dependent.

{¶ 46} The findings showed that over a nine-year period of time, appellant gave in excess of $30,000 to a man whom she had never met, whom she knew to be a con artist using a false identity, and who she nevertheless continued to attempt to meet in an effort to pursue cohabitation despite his threats against her unborn child.

{¶ 47} The findings showed that while this matter was pending, appellant intentionally became pregnant from another man with an extensive criminal history, in an acknowledged effort to retain public benefit eligibility given appellant's own apparent recognition that permanent custody of M.C. would likely be granted to appellee.

{¶ 48} The findings further reflected that appellant possesses serious, ongoing mental health issues compromising suitability for reunification, including bipolar disorder, borderline personality disorder, adjustment disorder, and P.T.S.D.

{¶ 49} Accordingly, the record contains ample evidence in support of the trial court's finding of the presence of R.C. 2151.414(B)(1)(a) and (B)(1)(e) factors in support of the award of permanent custody to appellee.

{¶ 50} In conjunction with the above, the findings of fact likewise contain an abundance of evidence in support of the trial court's R.C. 2151.414(D)(1)(d) determination that the best interest of M.C. was served by a grant of permanent custody

11.

due to the child's need for a legally secure placement that could not be achieved without a grant of permanent custody to appellee.

{¶ 51} Based upon the foregoing, we find that the record encompasses more than a preponderance of evidence in favor of the best interest determination, such that the trial court properly found by clear and convincing evidence that reunification could not timely occur. We find appellant's third assignment of error not well-taken.

{¶ 52} On consideration whereof, the judgment of the Sandusky County Court of Common Pleas, Juvenile Division, is hereby affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J. _____

_____
JUDGE

Thomas J. Osowik, J. _____
CONCUR.

_____
JUDGE

Gene A. Zmuda, P.J. _____
CONCURS IN JUDGMENT ONLY.

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.