[Cite as *In re K.G.*, 2026-Ohio-127.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

IN RE K.G.                          :
                                    :
Minor Child                         :                    No. 115351
                                    :
[Appeal by J.G., Father]            :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** January 15, 2026

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. AD-24906119

---

### *Appearances:*

Judith M. Kowalski, *for appellant.*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Joseph C. Young, Assistant Prosecuting Attorney, *for appellee.*

KATHLEEN ANN KEOUGH, J.:

{¶ 1} Appellant-alleged father, J.G. ("Father") appeals from the juvenile court's decision awarding permanent custody of minor child, K.G. ("the child"), who was one-and-a-half years old at the time of trial, to the Cuyahoga County Division of

Children and Family Services ("CCDCFS" or "the agency").[1]  For the reasons that follow, we find no merit to the appeal and affirm.

## I. Procedural History

{¶ 2}   In June 2024, CCDCFS filed a complaint for neglect and dependency and requested temporary custody of the child.  The complaint indicated that this was a twice-refiled matter and that the child was committed to the predispositional emergency temporary custody of CCDCFS on November 17, 2023, when he was four days old and had been in the agency's uninterrupted custody since that time. Relevant to Father, the complaint alleged that he (1) and the child's mother ("Mother") have a domestically violent relationship; (2) had been convicted of assault where Mother was the victim; (3) is currently incarcerated in Michigan; (4) has failed to establish paternity; and (5) has failed to consistently support, visit, or communicate with the child.

{¶ 3}   On September 4, 2024, the trial court adopted a magistrate's order finding the child neglected and dependent.  On September 14, 2024, predispositional temporary custody was terminated and the child was committed to the agency's temporary custody.  The agency filed a motion to modify temporary custody to permanent custody on October 28, 2024.  The motion included an affidavit from Danielle Bailey ("Bailey"), the assigned caseworker, averring that Father's case plan required him to establish paternity of the child, but "[n]either

---

[1] The child's mother's parental rights were also terminated during this proceeding, but Father is the only party to the instant appeal.  As such, our opinion does not address mother's termination of parental rights.

Mother, nor [Father], ha[d] cooperated in establishing paternity." Bailey also averred that Father "was recently released from incarceration after a conviction for assault where Mother was the victim."

{¶ 4} On June 17, 2025, the case went to trial. Mother did not appear and trial and Father appeared via Zoom. Counsel for both Mother and Father requested continuances on the matter; Father's was premised on a request for paternity testing. Father's continuance suggested that Father had previously been reluctant to submit to paternity testing, but was now willing to cooperate and that the child's paternal grandmother was receptive to placement or custody. Both continuances were denied. On July 1, 2025, the trial court terminated Mother and Father's parental rights and committed the child to the agency's permanent custody, after which Father filed the instant appeal.

## II. Factual History

{¶ 5} Bailey was CCDCFS's sole trial witness, who testified that she had been the extended caseworker assigned to this case since the child was committed to the temporary custody of CCDCFS almost immediately after the child was born. Regarding Father, she testified that he had not established paternity and that establishing paternity was the sole case-plan objective while he was incarcerated. Upon his release from jail in October 2024, Bailey met with him and his case plan was expanded to include mental health, housing, parenting, and domestic violence services. Shortly after developing this case plan, however, Father was yet again

incarcerated, this time for charges relating to fleeing, assaulting an officer, and obstructing justice, and these charges were still outstanding at the time of trial.

{¶ 6} Regarding visitation, Bailey stated that Father was unable to visit with the child while incarcerated but acknowledged that he had visited with the child once during his brief release from prison — the only visit Father has ever had with the child. Bailey felt that the visit was appropriate, and she did not have any concerns.

{¶ 7} On cross-examination, Bailey's testimony described the difficulties that she had in contacting the Father while he was incarcerated. Bailey stated that she had to contact Father using various contacts at the jail. During his first incarceration, his only case-plan objective was paternity establishment because he had not been evaluated for further case-plan services. At this time, he declined to participate in the paternity test. During the brief period that he was released, a full case plan was developed for Father, but he returned to jail shortly thereafter. Bailey did not explore what case-plan services were available to Father while incarcerated and testified that she had not contacted Father since his second incarceration because she could not reach the contacts that she used when Father was previously incarcerated at the same jail.

{¶ 8} Regarding placement with relatives, Bailey testified Father directed her to the child's paternal grandmother. However, she contacted the child's paternal grandmother for placement and left a detailed message, but as of the date of her testimony had not received a response.

{¶ 9} The child's guardian ad litem recommended that the child be placed in the agency's permanent custody. Regarding Father, she noted that he had not established paternity and could not provide for the child's needs because of his current incarceration. The court-appointed special advocate also recommended that the child be placed in the agency's permanent custody because of the child's success in his current placement.

{¶ 10} At the close of trial, the juvenile court announced that it was granting permanent custody to CCDCFS and journalized its findings shortly thereafter. Father timely appealed, assigning the following three errors for our review:

> 1. The decision of the Cuyahoga County Juvenile Court was against the manifest weight of the evidence.
>
> 2. The evidence was insufficient to support permanent custody of the child to the Cuyahoga County Division of Children and Family Services.
>
> 3. The juvenile court erred to the prejudice of the Father by not granting a continuance of the permanent custody trial.

### III. Law and Analysis

**A. Manifest Weight and Sufficiency**

{¶ 11} In Father's first assignment of error, he contends that the juvenile court's judgment granting permanent custody to CCDCFS was against the manifest weight of the evidence. His second assignment of error contends that the juvenile court's judgment was based on insufficient evidence.

{¶ 12} In cases involving a juvenile court's decision pursuant to R.C. 2151.414, we apply either sufficiency-of-the-evidence or manifest-weight-of-the-

evidence standards based on the nature of the arguments raised by the contesting party. *In re Z.C.*, 2023-Ohio-4703, ¶ 18. The weight of the evidence and the sufficiency of the evidence are two distinct concepts; sufficiency is a test of adequacy while weighing the evidence examines its effect in inducing belief. *Id.* at ¶ 13, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997); *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 23. Challenges to the manifest weight of the evidence require the appellate court to "weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a miscarriage of justice that the judgment must be reversed, and a new trial ordered." *Id.* at ¶ 14, citing *Volkman* at ¶ 20. Challenges to the sufficiency of the evidence should be affirmed when the evidence is legally sufficient to support the trial court's judgment as a matter of law. *Id.* at ¶ 13. Here, Father has challenged both the manifest weight and sufficiency of the evidence, so we proceed to examine both challenges.

{¶ 13} R.C. 2151.414 permits a juvenile court to modify a child's temporary custody with a public services agency to permanent custody if, after a hearing, the court determines by clear and convincing evidence that (1) one of the factors enumerated in R.C. 2151.414(B)(1)(a) through (e) are applicable and (2) permanent custody to the agency is in the best interest of the child. Clear and convincing evidence is evidence that produces in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. *In re T.B.*, 2014-Ohio-2051, ¶ 28 (8th Dist.).

{¶ 14} Here, the juvenile court found that R.C. 2151.414(B)(1)(a) applied. This factor pertinently provides that "the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents." If any one or more of the factors enumerated in R.C. 2151.414(E) are found by clear and convincing evidence, the court "shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent." In support of this finding, the juvenile court found that R.C. 2151.414(E)(1) and (13) were applicable to Father. These provide:

(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

(13) The parent is repeatedly incarcerated, and the repeated incarceration prevents the parent from providing care for the child.

{¶ 15} Turning to the best-interest determination, R.C. 2151.414(D)(1) requires that in determining the best interest of the child, the court must consider all relevant factors, including but not limited to those listed in R.C. 2151.414(D)(1). The journal entry does not specify whether this factor refers to Mother or Father. The agency's brief indicated that it could be relevant to either parent, based on Mother's extended lack of visitation with the child. Although a trial court is required

to consider each of the R.C. 2151.414(D)(1) factors in making its permanent custody determination, "there is not one element that is given greater weight than the others." *In re Schaefer*, 2006-Ohio-5513, ¶ 56. Here, the juvenile court's journal entry confirms that it considered the factors enumerated in R.C. 2151.414(D)(1)(a) through (e).

{¶ 16} In his manifest-weight and sufficiency challenges, Father specifically contests the juvenile courts best-interest findings, citing R.C. 2151.414(D)(1)(a) and (d). Subsection (a) pertains to "the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child[.]" Subsection (d) requires the court to consider the child's need for a legally secure permanent placement and whether that placement can be achieved without terminating the parents' rights. Father directs us to Bailey's testimony indicating that she had no concerns during Father's sole visit with the child and that no accommodations were made for him to complete case plan services while incarcerated. He also reiterates his willingness to submit to a paternity test despite earlier reluctance. Lastly, Father argues that the child currently does not have a "legally secure placement" because the child was relocated from his foster placement to another foster placement. We note, however, that the move was not prompted by any action or reason relating to the child. Father also generally argues that he and the child's mother are young parents and should be given more time to complete the case plan.

**{¶ 17}** We acknowledge that Father's arguments are supported by the record. However, the record also contains evidence suggesting that R.C. 2151.414(D)(1)(a) and (d) weigh in favor of the agency receiving permanent custody. First, because of his incarceration, Father was unable to successfully complete a case plan, which called for paternity establishment as well as services for domestic violence, mental health, parenting, and housing. Moreover, his incarceration at the beginning of this matter stemmed from a domestic dispute with Mother. Father's incarceration for two separate convictions during the pendency of this case suggests that Father's repeated involvement in the criminal justice system does not make him a viable option for placing the child in a legally secure permanent placement.

**{¶ 18}** At the time of trial, Father had not established paternity and only recently submitted to the proper testing; the results were not available at the time of trial. The Father's relationship with the child is nearly nonexistent; the child has met Father once in the child's lifetime and there was no consistency in visitation due to Father's repeated incarceration. Conversely, at the time of trial, the child had been with his foster family for about three months but had a prior relationship with the caregiver. The court-appointed special advocate felt that the child was thriving in his foster placement.

**{¶ 19}** Additionally, while Father advocated for paternal grandmother to be the child's custodian, no motion requesting such relief was filed and Bailey testified that she had not been able to contact paternal grandmother.

{¶ 20} Based on the foregoing, we find there is sufficient clear and convincing evidence supporting the juvenile court's conclusions concerning the juvenile court's best-interest determinations. Moreover, we cannot say that this is the exceptional case where the juvenile court lost its way and created a manifest miscarriage of justice in evaluating the best-interest factors. We accordingly overrule Father's first and second assignments of error.

## B. Father's Continuance

{¶ 21} Father's third assignment of error argues that the trial court erred in failing to continue trial to allow him to establish paternity or explore paternal grandmother's amenability and suitability to take custody of the child.

{¶ 22} We review a trial court's decision to continue a trial for an abuse of discretion. *State v. Unger*, 67 Ohio St.2d 65, 67 (1981). An abuse of discretion occurs when a court exercises its judgment in an unwarranted way regarding a matter over which it has discretionary authority. *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35

{¶ 23} Father generally argues that he should have been allocated more time to complete the case plan. At the time of trial, however, the child had been in agency custody since November 17, 2023, and trial commenced on June 17, 2025 — one year and seven months later. The complaint filed in June 2024 was the third refiled complaint pertaining to this matter.

{¶ 24} R.C. 2151.414(A)(2) provides that motions to modify temporary custody to permanent custody "shall" be heard not later than 120 days after the

motion is filed, but the court may continue the hearing for a "reasonable period of time" for good cause shown. Further, R.C. 2151.353(G) provides that a temporary custody order terminates after one year "after the earlier of the date on which the complaint in the case was filed or the child was first placed into shelter care, except that, upon the filing of a motion pursuant to section 2151.415 . . . the temporary custody order shall continue and not terminate until the court issues a dispositional order under that section." Moreover, the agency is permitted to request an extension of temporary custody if it shows "by clear and convincing evidence, that the extension is in the best interest of the child, there has been significant progress on the case plan of the child, and there is reasonable cause to believe that the child will be reunited with one of the parents or otherwise permanently placed within the period of extension." R.C. 2151.415(D).

{¶ 25} Here, trial was held over 200 days since the permanent custody motion was filed during that time which effectively extended the time for Father to complete his case plan. During this time, Bailey continued her efforts to contact Mother and Father about complying with the case plan but still, with the extra time, the case plan objectives were unfulfilled. Father had only recently submitted to paternity testing despite CCDCFS's best efforts to facilitate the testing prior. And, shortly after his case plan was developed, he was incarcerated, limiting his options for completing his case plan and providing for the child's basic needs.

{¶ 26} Father's inability to establish paternity and complete his case plan objectives were both stifled by Father's own actions – initially refusing to cooperate

with paternity testing and being incarcerated for two different crimes since the child was placed in CCDCFS's custody. Accordingly, we cannot say that the trial court abused its discretion in denying Father's motion to continue trial.

{¶ 27} We therefore overrule Father's third assignment of error.

## IV. Conclusion

{¶ 28} After careful consideration of the record and law, we overrule Father's assignments of error contesting the manifest weight and sufficiency of the evidence. We also find that the trial court did not abuse its discretion in denying Father's day-of-trial continuance.

{¶ 29} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KATHLEEN ANN KEOUGH, JUDGE

LISA B. FORBES, P.J., and
SEAN C. GALLAGHER, J., CONCUR