[Cite as *In re A.F.*, 2023-Ohio-4423.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

IN RE A.F., ET AL.          :

         :         No. 112918

Minor Children          :

         :

[Appeal by Mother, A.A.]          :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** December 7, 2023

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case Nos. AD20905510, AD20905511, and AD20905512

---

### *Appearances:*

David S. Bartos, *for appellant*.

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Zachary J. LaFleur, Assistant Prosecuting Attorney, *for appellee* CCDCFS.

EILEEN T. GALLAGHER, J.:

{¶ 1} Appellant, A.A. ("Mother"), appeals a juvenile court judgment granting permanent custody of her children, A.F., A.M., and R.F. (collectively "the children") to the Cuyahoga County Division of Children and Family Services ("CCDCFS" or "the agency"). She claims the following errors:

1. The court erred in holding CCDFS used "reasonable efforts" when granting permanent custody to CCDCFS.

2. It is against the manifest weight of the evidence that the trial court held it was in the best interest of the children to be placed in the permanent custody of CCDCFS.

3. The court erred in allowing the foster parent to provide testimony without being under oath or cross-examined.

4. The trial court abused its discretion by failing to consider the children as separate children when determining the best interest.

{¶ 2} For the reasons that follow, we affirm.

## I. Facts and Procedural History

{¶ 3} In June 2020, CCDCFS filed a complaint alleging the children were abused and neglected and requesting an order granting temporary custody of the children to CCDCFS. CCDCFS simultaneously filed a motion for emergency predispositional custody of the children, and the emergency motion was granted that same day. In October 2020, the court adjudicated the children abused and neglected and placed them in the temporary custody of CCDCFS. In its judgment entries dated October 8, 2020, filed in each child's case, the juvenile court found that the agency had made reasonable efforts to prevent removal of the children. By entries journalized October 20, 2021, the juvenile court again found that the agency made reasonable efforts to finalize the permanency plan of reunification. In November 2021, the agency filed a motion to modify temporary custody of the children to permanent custody. Mother also filed a motion for legal custody of the children.

{¶ 4} The court held a permanent custody hearing in May 2023. Becky Sawyers ("Sawyers"), an extended case worker with CCDCFS, testified that at the time of trial, A.F. was nine years old; A.M. was eight years old; and R.F was seven years old. Mother has a fourth child, who was five-years old at the time of trial and lives with her in Michigan. That child is not a party to this case.

{¶ 5} The three older children had been in agency custody since June 2020, a period of almost three years at the time of trial. However, A.F. had also previously been in the custody of Michigan Child Protective Services ("CPS") from the time she was four and one-half months old until she was two and one-half years old as a result of domestic violence between Mother and the children's father ("Father"). Sometime after A.F. was returned to Mother and the two younger children were born, Father took the children without permission or court order and moved with them to Ohio. Mother contacted the local police and CPS to report the alleged kidnapping, but there was nothing they could do because the alleged kidnapper was the children's father and her complaint involved a civil dispute.

{¶ 6} Mother did not know Father's Ohio address and, therefore, was unable to reunite with the children until CCDCFS removed the children from Father's custody approximately two years later.[1] CCDCFS contacted Mother and informed her that the agency had her children in custody. The agency developed a case plan for Mother with the goal of reunifying her with the children. The case plan included

---

[1] Since 2021, the children's father has not engaged in any services, has not visited the children, and his whereabouts were unknown. (Tr. 13.) He is not a party to this appeal.

parenting services, and Mother completed a series of nine supervised visits with a parenting coach through Michigan Health and Human Services. At that time, the children were in the custody of their maternal grandmother and step-grandfather, who lived near Mother in Michigan. On her own initiative, Mother also engaged in mental-health services through Team Wellness in Michigan in anticipation of the need for family counseling when the children were returned to her. (Tr. 15, 199.) Mother completed parenting services in Michigan in November 2021 and received positive reports from her parenting class provider. (Tr. 40.)

{¶ 7} Since CCDCFS obtained emergency custody of the children in June 2020, A.F. has been placed in seven foster care homes. The children were together in a foster home in Ohio before being placed with their maternal grandmother. The children were subsequently removed from their grandmother's home because A.F. alleged that her step-grandfather physically abused her. (Tr. 72.) Although the children were initially placed together in foster homes, A.F. was removed because she exhibited sexualized behaviors toward her younger siblings. She also displayed parentified behaviors, meaning she assumed the role of caregiver to her younger siblings by caring for and disciplining them. (Tr. 92, 95.) A.F. alleged that Father and others sexually abused her. And because she exhibited sexualized and parentified behaviors, A.F. was engaged in psychotherapy with several therapists and has been on medication during the years she has been in agency custody.

{¶ 8} Mother consistently visited the children in Ohio even though she continued to reside in Michigan. Although Mother has never had a valid driver's

license, she drove herself to visits in Sandusky, Ohio until she was charged with driving without a license. (Tr. 195-196.) Thereafter, Sandra Tedford ("Tedford"), who fostered A.F. when she was a baby drove Mother to her visits. In late 2022, Mother began overnight visits with the children in her Michigan home. There were three weekend visits in November 2022, and one week-long visit from December 27, 2022, to January 2, 2023. (Tr. 28.)

{¶ 9} Following the week-long visit, A.F. reported that Mother's boyfriend, later identified as Chris Davis ("Davis"), sexually assaulted her while she was sleeping in Mother's home. Shannon Hanrahan ("Hanrahan"), a sex-abuse intake worker with CCDCFS, investigated the allegation and determined it was "indicated," meaning the agency had cause to believe that the abuse likely occurred. (Tr. 126-127.) Hanrahan conducted a videorecorded forensic interview of A.F., which was admitted into evidence. During the interview, A.F. provided a detailed description of Davis's conduct. When Hanrahan questioned Mother about the allegation, Mother denied it could be true, claiming "Chris was never in the home during the children's visit." (Tr. 129.)

{¶ 10} Mother indicated that Davis was a neighbor who only comes to her house to do his laundry. (Tr. 129.) However, Hanrahan interviewed each of the children separately, and each of the children independently confirmed that Davis slept over in Mother's house while they were there. (Tr. 129.) They also separately and independently told her that they knew Davis because he was often in Mother's home. (Tr. 130.) Indeed, they separately and independently identified him in a

photograph and indicated that he was Mother's "boyfriend." (Tr. 130.) A.F. also states in the recorded interview that Davis was at Mother's home "all the time." (Exhibit No. 4.)

{¶ 11} Hanrahan also questioned Davis regarding the sex-abuse allegation. Davis denied ever being in Mother's home and denied ever being around the children. However, Hanrahan reported the allegation to local police and provided the police with a copy of the recorded interview. As a result of this information, a warrant was issued for Davis's arrest.

{¶ 12} Hanrahan confronted Mother about the inconsistencies between her claim that Davis was just a neighbor who occasionally does laundry at her house, the children's claim that Davis sleeps over at her house, and Davis's claim that he never goes to Mother's house and that he has never been around her children. According to Hanrahan, Mother "still maintained [Davis] was not there" and did not provide any explanation for the differing claims. (Tr. 135.) As a result, Hanrahan did not think Mother took the sex-abuse allegation seriously, particularly because she would not allow authorities to interview her youngest daughter as part of the investigation. (Tr. 136.)

{¶ 13} Tedford testified on behalf of Mother and stated that she babysat the children during the week-long visit while Mother was at work. (Tr. 156.) She also indicated she did not know whether Davis was present in Mother's home while the children were there. (Tr. 180-181.) Tedford lives 20 miles from Mother's home. (Tr. 175.)

{¶ 14} Tiffaney Mahoney ("Mahoney"), an extended-case supervisor with CCDCFS, testified that the sexual-abuse allegation against Davis was a serious concern. However, she also stated that the agency would have requested permanent custody even if the allegation had never been made because it had other concerns regarding Mother's parenting. (Tr. 91, 111.) According to Mahoney, there was no significant bond between Mother and the children. The lack of bond and attachment was due in part to the fact that Father absconded with the children and Mother had no contact with them for two years. But the lack of meaningful attachment was also due to Mother's inability to meet the children's ongoing behavioral- and mental-health needs. (Tr. 87-88.) Mahoney explained that every time the children returned from extended, unsupervised visits with Mother, they regressed in their behaviors. (Tr. 88.) Mother also failed to properly ensure the children take their prescribed medications. (Tr. 92.)

{¶ 15} The agency was also concerned about Mother's decision-making. The agency instructed Mother to have A.F. sleep in a separate bedroom away from her siblings because she exhibited sexualized behaviors toward them. Yet Mother allowed A.F. to sleep in the same bedroom with her younger sister A.M. A.F. also reported to the agency that she cooked for her younger siblings when they were at Mother's home and that Mother left them home alone. (Tr. 33.) The children reported that their step-grandfather had been present in the home with them even though he was not permitted to be there due to prior physical-abuse allegations

against him.  When the agency confronted Mother about him being present with the children, she claimed she did not know he was not allowed to be there.  (Tr. 35-36.)

{¶ 16} Mahoney further stated that despite having unsupervised visits and parent coaching, Mother had not learned to manage the children on her own. (Tr. 100.)  Mahoney explained:

> [Mother]'s been made aware of her children's behavioral needs, she's aware that they have prescribed medication, she's aware of the sexualized behaviors that [A.F.] has demonstrated towards her siblings, we have suggested to prevent further issues when they're having overnight weekend visits and extended visits that mom implement a plan, and creating a plan for example meant not allowing [A.F.] to sleep with her siblings on their own.
>
> You know, a plan would be in place, and so [A.F.] was to sleep in her mother's room.
>
> Mother did not follow that plan.  Again, with the children acting out, mom failed to be able to demonstrate being able to meet their behavioral needs on their own regularly and consistently, again relying on [A.F.] to do so or having to reach out to the foster parents for assistance in how to meet her children's needs.

(Tr. 115.)  Mahoney was also concerned that Mother minimized the seriousness of the children's behavioral needs.  Thus, despite the fact that Mother has an appropriate home and has demonstrated the ability to provide basic needs such as food, clothing, and shelter, the agency believed permanent custody was in the children's best interests.

{¶ 17} The guardian ad litem ("GAL") also recommended that the court grant permanent custody of the children to CCDCFS due to Mother's inability to adequately parent them.  (Tr. 241, GAL report and recommendation at 3.)  The GAL

shared the agency's concern that "Mother has shown both poor judgment and parental decision making." (GAL report and recommendation at 4.)

{¶ 18} Based on the evidence presented, the juvenile court denied Mother's motion for legal custody and granted permanent custody of the children to CCDCFS. Mother now appeals the juvenile court's judgment.

## II. Law and Analysis

{¶ 19} In the first assignment of error, Mother argues the juvenile court abused its discretion when it found that CCDCFS used "reasonable efforts" to reunite Mother with her children before it granted permanent custody of the children to the agency. She contends the agency should have done more, including either placing the children in a foster home closer to Mother's Michigan home or paying her travel expenses for visiting the children in Ohio.

{¶ 20} A parent has a "fundamental liberty interest * * * in the care, custody, and management of [his or her child]." *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). The termination of parental rights is regarded as "'the family law equivalent of the death penalty in a criminal case.'" *In re J.B.*, 8th Dist. Cuyahoga No. 98546, 2013-Ohio-1704, ¶ 66, quoting *In re Hoffman*, 97 Ohio St.3d 92, 2002-Ohio-5368, 776 N.E.2d 485, ¶ 14. Consequently, parents "'must be afforded every procedural and substantive protection the law allows.'" *In re Hayes*, 79 Ohio St.3d 46, 48, 679 N.E.2d 680 (1997), quoting *In re Smith*, 77 Ohio App.3d 1, 16, 601 N.E.2d 45 (6th Dist.1991).

{¶ 21} However, a parent's right to the care and custody of his or her child is not absolute. *In re L.G.*, 8th Dist. Cuyahoga No. 110789, 2022-Ohio-529, ¶ 49. "'[T]he natural rights of a parent * * * are always subject to the ultimate welfare of the child, which is the polestar or controlling principal to be observed.'" *In re L.D.*, 2017-Ohio-1037, 86 N.E.3d 1012, ¶ 29 (8th Dist.), quoting *In re Cunningham*, 59 Ohio St.2d 100, 106, 391 N.E.2d 1034 (1979).

{¶ 22} Ohio statutes governing child custody and protection "appropriately reflect the need to balance * * * [the] parents' * * * interest in the custody, care, nurturing, and rearing of their own children, and the state's *parens patriae* interest in providing for the security and welfare of children under its jurisdiction[.]" *In re Thompson*, 10th Dist. Franklin Nos. 00AP-1358 and 00AP-1359, 2001 Ohio App. LEXIS 1890, ¶ 19 (Apr. 26, 2001).

{¶ 23} A public children's services agency has a duty to make reasonable efforts to preserve or reunify a family unit, including preparing and maintaining a case plan to bring the children back home. R.C. 2151.412. However, a reasonable efforts determination is not required at a permanent-custody hearing on a complaint for permanent custody under R.C. 2151.353(A)(4) when the record demonstrates that a reasonable-efforts determination was previously made in the proceedings. *In re N.R.*, 8th Dist. Cuyahoga No. 110144, 2021-Ohio-1589, ¶ 38, citing *In re A.R.*, 8th Dist. Cuyahoga No. 109482, 2020-Ohio-5005, ¶ 32. If the agency has not demonstrated that reasonable efforts have been made prior to the permanent custody hearing, then the agency must demonstrate such efforts at the

hearing. *Id.*, citing *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶ 43.

{¶ 24} The juvenile court found that the agency made reasonable efforts to prevent the continued removal of the children from Mother's home and to make it possible for them to safely return to Mother's home in its judgment entry granting the agency temporary custody of the children in October 2020, and again in its October 20 2021 judgment entry, when it found that the agency made reasonable efforts to finalize the permanency plan of reunification. The juvenile court was, therefore, not required to make a reasonable-efforts determination at the permanent-custody hearing.

{¶ 25} Although not required to do so, the juvenile court again found that the agency had made reasonable efforts to return the children to Mother's custody in the judgment entry granting the agency permanent custody of the children. Pursuant to R.C. 2151.414(E)(1), the court found:

> Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the children to be placed outside the child's home.

(June 5, 2023 journal entry granting permanent custody at 2.) Still, Mother asserts the record does not support the court's reasonable-efforts findings because the record shows that CCDCFS obstructed rather than assisted Mother's efforts at reunification.

{¶ 26} R.C. 2151.419(A) does not specify the evidentiary standard of proof required for a public children's services agency to satisfy the reasonable-efforts requirement. However, the standard of proof applied to judgments awarding permanent custody is that of clear and convincing evidence. R.C. 2151.414(B)(1). And this court has previously applied the clear and convincing evidence standard of proof to the juvenile court's reasonable-efforts determination. *See, e.g.*, *In re L.G.*, 8th Dist. Cuyahoga No. 110789, 2022-Ohio-529, at ¶ 55. We, therefore, apply the clear-and-convincing-evidence standard of proof to this issue.

{¶ 27} "'Clear and convincing evidence' is evidence that 'will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established.'" *In re T.B.*, 8th Dist. Cuyahoga No. 99931, 2014-Ohio-2051, ¶ 28, quoting *Cross v. Ledford*, 161 Ohio St. 469, 477, 120 N.E.2d 118 (1954). The clear-and-convincing-evidence standard is an intermediate standard, "being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." (Emphasis deleted.) *Cross* at 477.

{¶ 28} "'Reasonable efforts means that a children's services agency must act diligently and provide services appropriate to the family's need to prevent the child's removal or as a predicate to reunification.'" *In re H.M.K.*, 3d Dist. Wyandot Nos. 16-12-15 and 16-12-16, 2013-Ohio-4317, ¶ 95, quoting *In re D.A.*, 6th Dist. Lucas No. L-11-1197, 2012-Ohio-1104, ¶ 30. "In other words, the agency must use reasonable efforts to help remove the obstacles preventing family reunification." *In re L.G.* at

¶ 60, citing *In re C.B.C.*, 4th Dist. Lawrence Nos. 15CA18 and 15CA19, 2016-Ohio-916, ¶ 76, citing Bean, *Reasonable Efforts: What State Courts Think*, 36 U.Tol.L.Rev. 321, 366 (2005).

> When considering whether the agency made reasonable efforts to prevent the continued removal, the issue is not whether the agency could have done more, but whether it did enough to satisfy the reasonableness standard under the statute. *In re Davidson-Rush*, 5th Dist. Stark No. 2006 CA 00121, 2006-Ohio-4873, ¶ 50. "'Reasonable efforts' does not mean all available efforts." *In re Lewis*, 4th Dist. Athens No. 03CA12, 2003-Ohio-5262, ¶ 16. "In determining whether reasonable efforts were made, the child's health and safety shall be paramount." R.C. 2151.419(A)(1).

*In re J.B.*, 8th Dist. Cuyahoga No. 109039, 2020-Ohio-3675, ¶ 21.

{¶ 29} Mother's poor judgment and parenting skills were the primary obstacles preventing Mother's reunification with the children. The agency provided Mother with a case plan that included parenting. Pursuant to the plan and the agency's referral, Mother completed a series of supervised visits with a parenting coach. The agency also allowed Mother to have extended, unsupervised visits with the children to develop her skills. Despite the completion of services and visiting opportunities, the concerns regarding Mother's decision making persisted. The agency specifically required that Mother keep A.F. in a separate bedroom from her siblings because A.F. tended to exhibit sexualized behaviors toward them. Mother ignored this concern and placed A.F. and her sister in the same room. Mother was aware that the children have behavioral issues and that they require prescription medications, yet she failed to properly address the behaviors and failed to administer the medications.

{¶ 30} Mother was also told not to allow the children's step-grandfather into the house when the children are there because A.F. had previously accused him of physically abusing her. Although the accusation was unsubstantiated, Mother disregarded the instruction and allowed the step-grandfather into the home with the children. Moreover, all three children separately and independently reported that Davis slept in Mother's home while they were there, and A.F. reported that he sexually assaulted her.

{¶ 31} Mother nevertheless argues the agency failed to do enough to help her reunite with her children because they failed to place the children in a foster home closer to her Michigan residence. However, the agency placed the children with their maternal grandmother in Michigan, but they had to be removed when A.F alleged that her step-grandfather physically abused her. Thus, the record clearly and convincingly shows the agency made great efforts to reunite the children with Mother, but Mother failed to do her part to remedy the obstacles to reunification.

{¶ 32} The first assignment of error is overruled.

## A. Best Interest of the Child

{¶ 33} In the second assignment of error, Mother asserts that the juvenile court's finding that permanent custody was in the children's best interests is against the manifest weight of the evidence.

{¶ 34} R.C. 2151.414 provides a two-prong analysis to be applied by a juvenile court in adjudicating a motion for permanent custody. *In re S.C.*, 2018-Ohio-2523, 115 N.E.3d 813, ¶ 20 (8th Dist.), citing R.C. 2151.414(B). The first prong authorizes

the juvenile court to grant permanent custody of a child to the public agency if, after a hearing, the court determines, by clear and convincing evidence, that any of the following factors apply: (a) the child is not abandoned or orphaned, but the child cannot be placed with either parent within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned, and there are no relatives of the child who are able to take permanent custody; (d) the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for 12 or more months of a consecutive 22-month period; or (e) the child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state.  R.C. 2151.414(B)(1)(a)-(e).

{¶ 35} Only one of the factors listed in R.C. 2151.414(B)(1)(a)-(e) must be established to satisfy the first prong of the two-part analysis for granting permanent custody of a child to an agency.  *In re D.H.*, 8th Dist. Cuyahoga No. 110505, 2021-Ohio-3821, ¶ 27, citing *In re L.W.*, 8th Dist. Cuyahoga No. 104881, 2017-Ohio-657. If any one of the factors listed in R.C. 2151.414(B)(1)(a)-(e) is established, the court may move to the second prong of the analysis, which requires the juvenile court to determine, by clear and convincing evidence, whether it is in the best interest of the child to grant permanent custody to the agency pursuant to R.C. 2151.414(D).

{¶ 36} A juvenile court's decision to grant permanent custody will not be reversed as being against the manifest weight of the evidence "'if the record contains

some competent, credible evidence from which the court could have found that the essential statutory elements for permanent custody had been established by clear and convincing evidence.'" *In re G.W.*, 8th Dist. Cuyahoga No. 107512, 2019-Ohio-1533, ¶ 62, quoting *In re A.P.*, 8th Dist. Cuyahoga No. 104130, 2016-Ohio-5849, ¶ 16.

{¶ 37} With respect to the first prong of the permanent-custody analysis, it is undisputed that, at the time of trial, the children had been in the temporary custody of a public children services agency or private child placing agency for 12 or more months of a consecutive 22-month period. Indeed, the children had been in agency custody for nearly three years. Therefore, the first prong of the two-part analysis is satisfied and we now turn to the second prong of the analysis, which requires us to determine, by clear and convincing evidence, whether granting permanent custody of the children was in the children's best interests.

{¶ 38} We recognize that, given the nature of the proceeding and the impact the court's decision will have on the lives of the parties concerned, the juvenile court enjoys broad discretion in determining whether an order of permanent custody is in the child's best interest. *In re Awkal*, 95 Ohio App.3d 309, 316, 642 N.E.2d 424 (8th Dist.1994). We, therefore, review a juvenile court's determination of a child's best interests under R.C. 2151.414(D) for an abuse of discretion. *In re D.A.*, 8th Dist. Cuyahoga No. 95188, 2010-Ohio-5618, ¶ 47.

{¶ 39} An abuse of discretion occurs when a court exercises its judgment in an unwarranted way regarding a matter over which it has discretionary authority. *Johnson v. Abdullah*, 166 Ohio St.3d 427, 2021-Ohio-3304, 187 N.E.3d 463, ¶ 35. A

court also abuses its discretion "when a legal rule entrusts a decision to a judge's discretion and the judge's exercise of that discretion is outside of the legally permissible range of choices." *State v. Hackett*, 164 Ohio St.3d 74, 2020-Ohio-6699, 172 N.E.3d 75, ¶ 19.

{¶ 40} This court has held that an abuse of discretion may be found where a trial court "applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact." *Thomas v. Cleveland*, 176 Ohio App.3d 401, 2008-Ohio-1720, 892 N.E.2d 454, ¶ 15 (8th Dist.). When applying the abuse-of-discretion standard, a reviewing court may not substitute its judgment for that of the trial court. *Vannucci v. Schneider*, 2018-Ohio-1294, 110 N.E.3d 716, ¶ 22 (8th Dist.).

{¶ 41} In determining the best interest of a child, a juvenile court may apply one of two different tests set forth in R.C. 2151.414(D)(1) and (D)(2). *In re S.C.*, 10th Dist. Franklin No. 21AP-203, 2022-Ohio-356, ¶ 38, quoting *In re J.P.*, 10th Dist. Franklin No. 18AP-834, 2019-Ohio-1619, ¶ 39. In determining the best interest of the child under R.C. 2151.414(D)(1), the juvenile court must consider all relevant factors, including but not limited to: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents, and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem; (3) the custodial history of the child; (4) the child's need for a legally secure placement and whether that type of placement can be achieved without a grant of

permanent custody to the agency; and (5) whether any factors in R.C. 2151.414(E)(7) through (11) are applicable.

{¶ 42} Although a trial court is required to consider each of the R.C. 2151.414(D)(1) factors in making its permanent custody determination, "there is not one element that is given greater weight than the others pursuant to the statute." *In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, 857 N.E.2d 532, ¶ 56. Moreover, only one factor needs to be resolved in favor of permanent custody in order to find that permanent custody is in the child's best interest. *In re S.C.*, 8th Dist. Cuyahoga No. 102350, 2015-Ohio-2410, ¶ 30.

{¶ 43} Alternatively, the court may apply the test set forth in R.C. 2151.414(D)(2), which provides as follows:

> If all of the following apply, permanent custody is in the best interest of the child, and the court *shall* commit the child to the permanent custody of a public children services agency or private child placing agency:
>
> (a) The court determines by clear and convincing evidence that one or more of the factors in division (E) of this section exist and the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent.
>
> (b) The child has been in an agency's custody for two years or longer, and no longer qualifies for temporary custody pursuant to division (D) of section 2151.415 of the Revised Code.
>
> (c) The child does not meet the requirements for a planned permanent living arrangement pursuant to division (A)(5) of section 2151.353 of the Revised Code.
>
> (d) Prior to the dispositional hearing, no relative or other interested person has filed, or has been identified in, a motion for legal custody of the child.

(Emphasis added.) If all the factors enumerated under R.C. 2151.414(D)(2) are applicable, permanent custody is per se in the child's best interest, and the juvenile court must commit the child to the permanent custody of the agency. *In re G.A.*, 8th Dist. Cuyahoga No. 108932, 2020-Ohio-2949, ¶ 61, citing *In re J.R.*, 10th Dist. Franklin No. 17AP-698, 2018-Ohio-1474, ¶ 41.

{¶ 44} The juvenile court made alternative findings under both R.C. 2151.414(D)(1) and (D)(2). However, it is not necessary to determine if the court correctly applied the R.C. 2151.414(D)(1) factors if the findings under R.C. 2151.414(D)(2) are supported by clear and convincing evidence because "[a] finding under section (D)(2) of R.C. 2151.414 mandates that the trial court find it is in a child's best interest to be placed in the agency's permanent custody." *In re A.S.*, 8th Dist. Cuyahoga Nos. 110422 and 110472, 2021-Ohio-3829, ¶ 42, citing *In re G.A.* at ¶ 59. We, therefore, focus our review on the court's findings under R.C. 2151.414(D)(2).

{¶ 45} The juvenile court found that all the factors enumerated in R.C. 2151.414(D)(2) were applicable. The court found, in relevant part:

> With respect to the best interest of the child, the Court finds that pursuant to O.R.C. 2151.414(D)(2) that all of the following apply:
>
> (a) The Court determines by clear and convincing evidence that one or more of the factors in division (E) of this section exist and the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent.
>
> (b) The child has been in the agency's custody for two years or longer and no longer qualifies for temporary custody pursuant to division (D) of section 2151.415 of the Ohio Revised Code.

(c) The child does not meet the requirements for a planned permanent living arrangement pursuant to division (A)(5) of Section 2151.353 of the Ohio Revised Code.

(d) Prior to the dispositional hearing, no relative or other interested person has filed, or has been identified in a motion for legal Custody.

{¶ 46} In determining whether R.C. 2151.414(D)(2)(a) applies, we must look to R.C. 215 1.414(E) because determining "that a child cannot be placed with the parents within a reasonable time or should not be placed with them, the court must find, by clear and convincing evidence, that at least one of the factors in R.C. 2151.414(E)(1)-(16) is present." *In re G.A.*, 8th Dist. Cuyahoga No. 108932, 2020-Ohio-2949, at ¶ 62, citing *In re S.C.*, 8th Dist. Cuyahoga No. 108036, 2019-Ohio-3664, citing *In re S.W.*, 11th Dist. Ashtabula No. 2017-A-0089, 2018-Ohio-1672.

{¶ 47} The juvenile court found that the children cannot be placed with either of their parents within a reasonable time or should not be placed with either parent pursuant to R.C. 2151.414(E)(1), (4), (10), (14), and (16). The court's judgment entry states, in relevant part:

The Court finds by clear and convincing evidence that the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent, pursuant to R.C. 2151.414(E):

(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home.

(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the

child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home.

(10) The parent (alleged Father) has abandoned the child.

(14) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect.

(16) Any other factor the Court finds relevant: Mother was receiving overnight visits, but they were suspended after allegations of sexual abuse occurred in her home, which were indicated by CCDCFS.

{¶ 48} The court found that Father abandoned the children, but he is not a party to this case, and there is no evidence that Mother abandoned the children. However, there is also clear and convincing evidence to support the trial court's findings under R.C. 2151.414(E)(1), (14), and (16). As previously determined in the first assignment of error, Mother failed to remedy the conditions that prevented the children from being reunited with her despite the agency's reasonable efforts to assist Mother in removing the barriers to reunification. R.C. 2151.414(E)(1). There is also evidence that Mother was unwilling to take appropriate action to prevent sexual or physical abuse and neglect of the children. R.C. 2151.414(E)(14). She admittedly allowed the children's step-grandfather to be present in her home with the children even though they were removed from custody in his home after A.F. alleged that he physically abused her and the agency told Mother that the children's step-grandfather was not permitted to be around the children.

{¶ 49} There is also evidence that Mother allowed Davis to spend nights in her home with the children and that he sexually assaulted A.F. during one of those

nights. Although the sex-abuse allegation was indicated rather than substantiated, all three children separately and independently told Hanrahan that Davis slept in the home and that he was Mother's "boyfriend" despite Mother's claims to the contrary. When Hanrahan confronted Mother about the allegation, she failed to take it seriously. The trial court found that this evidence also supports the court's finding under R.C. 2151.414(E)(16), which allows the court to find "any other factor." Thus, there is clear and convincing evidence to support the court's finding under R.C. 2151.414(D)(2)(a).

{¶ 50} R.C. 2151.414(D)(2)(b) requires the court to find that the children have been in agency custody for over two years and no longer qualified for temporary custody. R.C. 2151.415(D)(4) governs the permissible amount of time children may remain in temporary custody and states:

> No court shall grant an agency more than two extensions of temporary custody pursuant to division (D) of this section and the court shall not order an existing temporary custody order to continue beyond two years after the date on which the complaint was filed or the child was first placed into shelter care, whichever date is earlier, regardless of whether any extensions have been previously ordered pursuant to division (D) of this section.

It is undisputed that the children have been in agency custody for almost three years and that they were no longer eligible for extension of temporary custody. Therefore, there is clear and convincing evidence to support the court's finding under R.C. 2151.415(D)(4)(b).

{¶ 51} The factor listed in R.C. 2151.414(D)(2)(c) is satisfied if the child "does not meet the requirements for a planned permanent living arrangement pursuant to

division (A)(5) of Section 2151.353 of the Revised Code." To qualify for a planned permanent-living arrangement under R.C. 2151.353, the child must, among other things, be "sixteen years of age or older[.]" R.C. 2153.353(A)(5)(b). Because none of the children are 16 years of age or older, the factor listed in R.C. 2151.414(D)(2)(c) is satisfied.

{¶ 52} Finally, the factor in R.C. 2151.414(D)(2)(d) is established if "[p]rior to the dispositional hearing, no relative or other interested person has filed, or has been identified in, a motion for legal custody." A review of the juvenile court record reveals that no such motion was filed in this case. Therefore, all the factors outlined in R.C. 2151.414(D)(2) were satisfied and the juvenile court had no choice but to find that granting permanent custody of the children to CCDCFS was in the children's best interests.

{¶ 53} Accordingly, the second assignment of error is overruled.

## B. Foster Parent Testimony

{¶ 54} In the third assignment of error, Mother argues the trial court erred by allowing a foster parent to provide a statement to the court even though the foster parent was not under oath and was not subject to cross-examination. Mother contends the foster parent's statement should not be deemed evidence and should not have been considered in the permanent-custody analysis.

{¶ 55} At the permanent-custody hearing, before closing arguments, the younger children's foster mother made a brief statement regarding her home and the younger children's education. Mother did not object to the statement and,

therefore, forfeited all but plain error. *In re De.D.*, 8th Dist. Cuyahoga No. 108760, 2020-Ohio-906, ¶ 13 (holding that failure to object to an issue in the lower court waives a party's right to challenge that issue on appeal absent plain error). "Plain error exists only when it can be determined that the outcome of the trial would have been different." *In re S.F.*, 8th Dist. Cuyahoga No. 112327, 2023-Ohio-1900, ¶ 15, citing *In re Z.T.*, 8th Dist. Cuyahoga No. 88009, 2007-Ohio-827, ¶ 19, citing *State v. Moreland*, 50 Ohio St.3d 58, 62, 552 N.E.2d 894 (1990).

{¶ 56} Throughout our analysis and review of this case, we have not once mentioned the foster parent's statement because the juvenile court's decision would have been no different had the foster parent remained silent. Therefore, Mother cannot establish plain error as a result of the statement, and the third assignment of error is overruled.

### C. Separate Children

{¶ 57} In the fourth assignment of error, Mother argues the juvenile court abused its discretion by failing to consider the children as separate children when making the best-interest determination. She contends that each child is different, has different needs, and should be addressed separately.

{¶ 58} We agree that each child is unique. However, the children in this case are close in age and share many of the same special needs. The evidence shows that all the children require psychotherapy to address behavioral issues resulting from abuse and neglect. They are all under ten years of age and require protection from the threat of physical, sexual, and emotional harm from adults. Thus, the juvenile

court's findings that Mother failed to make appropriate decisions to protect the health and safety of the children applied equally to all the children. We, therefore, find no error in the juvenile court's analysis of the children's best interest.

{¶ 59} The fourth assignment of error is overruled.

{¶ 60} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN T. GALLAGHER, JUDGE

MICHELLE J. SHEEHAN, P.J., and
LISA B. FORBES, J., CONCUR