[Cite as *In re B.V.*, 2025-Ohio-971.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| IN RE B.V., ET AL. | : | |
| | | No. 114421 |
| Minor Children | : | |
| [Appeal by J.T., Mother] | : | |

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** March 20, 2025

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case Nos. AD-22902627 and AD-22902625

---

### *Appearances:*

Rachel A. Kopec, *for appellant*.

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Joseph C. Young, Assistant Prosecuting Attorney, *for appellee* Cuyahoga County Division of Children and Family Services.

SEAN C. GALLAGHER, J.:

{¶ 1} Appellant J.T. ("mother") appeals from the judgment entries of the Cuyahoga County Court of Common Pleas, Juvenile Division ("juvenile court"), that awarded permanent custody of her children, B.V. and A.V., to the Cuyahoga County Division of Children and Family Services ("CCDCFS" or "the agency") and

terminated her parental rights.[1] After a careful review of the record, we affirm the juvenile court's decisions.

{¶ 2} On March 15, 2022, CCDCFS filed a complaint alleging the children to be abused (A.V.) and dependent (A.V. and B.V.) and requesting temporary custody to the agency.[2] The children were committed to the predispositional temporary custody of CCDCFS on March 16, 2022. An amended complaint was filed, which included allegations, among others, that mother engaged in a physical altercation with the children's older sibling while A.V. and B.V. were home, that mother has mental-health issues and displays erratic behaviors, that mother may have a substance-abuse problem, and that mother lacks appropriate judgment and parenting skills to provide a safe home for the children. The amended complaint also included allegations against B.V.'s alleged father, who did not establish paternity or communicate with the child, and A.V.'s father, who was alleged to be in a halfway house and unable to provide care for the child. During the course of the proceedings, the juvenile court adjudicated the children as dependent and committed the children to the temporary custody of CCDCFS. The juvenile court found that "[m]other needs to address her anger issues, erratic behaviors, and mental health concerns in order to provide a safe home for the [children]." Case-

---

[1] An appeal by A.V.'s father also was filed with this court.

[2] The complaint included a third child who since became emancipated and is not involved in this appeal.

plan services were provided, and the juvenile court granted an extension of temporary custody.

{¶ 3} On February 27, 2024, CCDCFS filed a motion to modify temporary custody to permanent custody in each child's case. After multiple continuances, trial was set for August 30, 2024. On the day of trial, mother failed to appear. The juvenile court denied an oral motion for continuance made by mother's trial counsel. The juvenile court also denied a request for continuance made by counsel for the father of A.V., whose client was incarcerated. During trial, the juvenile court heard testimony provided by the CCDCFS caseworker. The juvenile court also heard from the children's guardian ad litem ("GAL"), who recommended that permanent custody to CCDCFS is in the children's best interest. On September 4, 2024, the juvenile court journalized a judgment entry in each child's case. In its decisions, the juvenile court granted CCDCFS's motion, committed each child to the permanent custody of the agency, and terminated the parents' parental rights. Mother timely appealed.

{¶ 4} Under her first assignment of error, mother claims the juvenile court erred by denying her trial counsel's motion for continuance, which was made the morning of trial after mother failed to appear.

{¶ 5} Although courts must ensure that due process is provided in parental-rights proceedings, a parent does not have an absolute right to be present at a permanent-custody hearing. *See In re J.H.*, 2024-Ohio-5102, ¶ 56 (8th Dist.), citing *In re M.W.*, 2016-Ohio-2948, ¶ 11 (8th Dist.). Generally, the decision to grant or

deny a motion for continuance is within the sound discretion of the trial court and will not be reversed absent an abuse of discretion. *State v. Unger*, 67 Ohio St.2d 65, 67 (1981), citing *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964).

{¶ 6} Pursuant to R.C. 2151.414(A)(2), the juvenile court is to hold the permanent-custody hearing no later than 120 days after the agency files its motion for permanent custody, "except that for good cause shown," the court may grant a reasonable continuance, and the court is supposed to dispose of the motion for permanent custody not later than 200 days after the agency files its motion. Furthermore, pursuant to Juv.R. 23, "[c]ontinuances shall be granted only when imperative to secure fair treatment for the parties" and pursuant to Loc.R. 35(C) of the Cuyahoga County Court of Common Pleas, Juvenile Division, "[n]o case will be continued on the day of trial or hearing except for good cause shown, which cause was not known to the party or counsel prior to the date of trial or hearing . . . ."

{¶ 7} Here, mother argues that although she did not appear for trial, her trial counsel offered reasons that warranted a short continuance, including that she had historically come to court and that she had medical issues that included some short-term memory loss. Mother's trial counsel also indicated to the juvenile court that he spoke with mother two days before trial and that she was planning to be there, though he did not actually know why she failed to appear, and mother had not contacted him or the court to explain her absence. Thus, the actual reason for mother's absence was unknown and good cause was not shown. Counsel for CCDCFS objected to the request for a continuance to secure mother's presence,

noting that the trial date had been continued multiple times and that mother had proper notice of the trial date. Further, the record shows that the agency was prepared to go forward with its case, the children's GAL and the caseworker were present, mother's counsel was able to represent mother's interests, and a continuance was not imperative to secure fair treatment for the parties. As the juvenile court recognized, the case was "well beyond the two years," the motion for permanent custody had been pending since February 2024, and it was not in the children's best interest to continue the matter. After examining the circumstances presented in this case, we conclude that the juvenile court did not abuse its discretion in denying the requested continuance. Accordingly, the first assignment of error is overruled.

{¶ 8} Under her second assignment of error, mother claims the juvenile court's decisions granting permanent custody of the minor children to CCDCFS are against the manifest weight of the evidence. "When reviewing for manifest weight, the appellate court must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." *In re Z.C.*, 2023-Ohio-4703, ¶ 14, citing *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 20.

{¶ 9} Although it is well established that the right to parent one's child is a fundamental right, the government has broad authority to intervene to protect a child's health or safety. *In re C.F.*, 2007-Ohio-1104, ¶ 28, citing *Troxel v. Granville*,

530 U.S. 57, 66 (2000); R.C. 2151.01. Ultimately, the natural rights of a parent are always subject to the ultimate welfare of the child, which is the controlling principle to be observed. *In re B.C.*, 2014-Ohio-4558, ¶ 20, citing *In re Cunningham*, 59 Ohio St.2d 100, 106 (1979).

{¶ 10} "Under R.C. 2151.414(B)(1), a juvenile court may grant permanent custody of a child to the agency that moved for permanent custody if the court determines, 'by clear and convincing evidence, that it is in the best interest of the child' to do so and that one of five factors enumerated in R.C. 2151.414(B)(1)(a) through (e) applies." *In re Z.C.,* at ¶ 7, quoting R.C. 2151.414(B)(1). "'Clear and convincing evidence is that measure or degree of proof which is more than a mere "preponderance of the evidence," but not to the extent of such certainty as is required "beyond a reasonable doubt" in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" *Id.*, quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶ 11} In each child's case herein, the juvenile court made each of the statutory determinations and engaged in the requisite analysis. Mother does not challenge the juvenile court's determination under R.C. 2151.414(B)(1)(d) that the children have been in the temporary custody of the agency for twelve or more months of a consecutive twenty-two-month period, which is supported by the record herein. Instead, mother's challenge focuses on the juvenile court's determination that permanent custody to CCDCFS is in the children's best interest.

{¶ 12} "[T]he best interests of the child are paramount in any custody case[,]" and courts are to liberally interpret the statutes under R.C. Ch. 2151 "to provide for the care and protection of the child . . . ." *In re A.B.*, 2006-Ohio-4359, ¶ 32, citing R.C. 2151.01(A). R.C. 2151.414(D) sets forth the factors a juvenile court is to consider in determining the best interest of a child in a permanent-custody hearing. Pursuant to R.C. 2151.414(D)(1), in determining the best interest of a child at a permanent-custody hearing, a juvenile court "shall consider all relevant factors, including, but not limited to," the factors listed thereunder. "There is not one element that is given greater weight than the others pursuant to the statute." *In re Schaefer*, 2006-Ohio-5513, ¶ 56. R.C. 2151.414(D)(2) instructs that if all of the factors thereunder apply, "permanent custody is in the best interest of the child, and the court *shall* commit the child to the permanent custody" of the agency. (Emphasis added.)

{¶ 13} Here, in each child's case, the juvenile court's decision reflects that it considered all relevant best-interest factors, including the enumerated factors under R.C. 2151.414(D)(1)(a)-(e), which are specifically set forth in the court's decision. As applicable to those factors, the juvenile court included findings, among others, for each child that "[t]he child has been with the same caregiver for over 2 years and [the child] has a strong bond with the caregiver and [the child's] sibling, who are also in the caregiver's home"; "[t]he [child's] GAL recommends permanent custody"; "[t]he child has been in CCDCFS custody since March 2022"; and "[t]he child deserves a safe and stable home environment where [the child's] needs can be

met[,]" which could not be achieved without a grant of permanent custody. As the juvenile court observed, "Mother has continuously failed to engage in, complete, and benefit from case plan services and she currently does not have an appropriate home in which to care for the child."

{¶ 14} Additionally, the juvenile court found all the factors under R.C. 2151.414(D)(2) applied, in which case the statute requires the court to commit the child to the permanent custody of the agency.[3] In each child's case, the juvenile court included a finding, by clear and convincing evidence, that "the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent, pursuant to O.R.C. 2151.414(E)" and found multiple factors under R.C. 2151.414(E) applied.

{¶ 15} Ultimately, in each child's case, the juvenile court determined "by clear and convincing evidence" pursuant to R.C. 2151.414(D)(1) and (D)(2) that "it is in the best interest of the child to be placed in the Permanent Custody of CCDCFS." Mother does not even mention R.C. 2151.414(D)(2) in her brief. Nevertheless, the record supports the trial court's best-interest determination under both provisions.

{¶ 16} Although mother maintains she substantially complied with case-plan services and challenges some of the testimony and evidence provided, the juvenile court properly weighed all relevant factors in rendering its disposition. The record shows that although mother had completed case-plan services for parenting

---

[3] The R.C. 2151.414(D)(2) factors are set forth in the juvenile court's judgment entries.

and anger management, she did not consistently engage in services for mental health and substance abuse. The caseworker testified that mother tested positive for marijuana in March, April, and May 2024, she did not submit for a drug screen in June or July 2024, and she admitted to the caseworker that she was still using marijuana. Also, mother was arrested in June 2024, she was charged with a felony-burglary offense and related offenses that were still pending, and she was fitted with ankle monitors for drugs and alcohol. Mother was provided weekly supervised visitation with the children. However, she was not always consistent, and she admitted to cancelling some visits because she had been using marijuana. Though mother and the children enjoyed their time with each other, there were times when mother displayed outbursts and inappropriate behavior in front of the children. Further, mother did not have suitable housing for the children. The testimony and evidence in the matter showed that mother had not benefitted from the services provided or changed her behavior so as to permit reunification with the children.

{¶ 17} Additionally, B.V.'s alleged father did not establish paternity and was not involved in the case. The caseworker testified that A.V.'s father was in jail, had not completed case-plan services, and was not able to care for his child. The caseworker did not believe it was in the children's best interest to be returned to either of their parents. The caseworker testified that the children were placed together in a licensed foster home, were doing well in the foster home, were bonded with their caregiver, and their needs were being met. The GAL for the children

recommended permanent custody to CCDCFS, indicating a variety of compelling reasons.

{¶ 18} Insofar as mother challenges the agency's efforts to investigate certain relatives, the record shows several potential relative placements were investigated, but no suitable relatives were found. Furthermore, the agency was not required to exhaust all possible placements before requesting permanent custody, and "[R.C. 2151.414] does not make the availability of a placement that would not require a termination of parental rights an all-controlling factor." *In re Schaefer*, 2006-Ohio-5513, at ¶ 64.

{¶ 19} As the trial court determined, at the time of trial, the children had been in the custody of CCDCFS for over two years and they were in need of a safe and stable home environment. The juvenile court properly determined in accordance with R.C. 2151.414(D)(1) and (2) that an award of permanent custody to the agency was in their best interest.

{¶ 20} After carefully reviewing the entire record, we do not find the juvenile court clearly lost its way or committed a manifest miscarriage of justice by terminating the parents' parental rights and awarding permanent custody of the children to CCDCFS. We are not persuaded by mother's arguments otherwise. We conclude that in each child's case, the juvenile court's judgment is not against the manifest weight of the evidence. Accordingly, mother's second assignment of error is overruled.

{¶ 21} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
SEAN C. GALLAGHER, JUDGE

LISA B. FORBES, P.J., and
EMANUELLA D. GROVES, J., CONCUR